**Bruce McBRYAR, Petitioner,**

v.

**Clay E. McELROY, Superintendent of Colony Farm Correctional Institute, Hardwick, Georgia.**

Civ. A. No. C79–66R.

United States District Court,
N. D. Georgia,
Rome Division.

March 17, 1981.

Richard D. Allen, Jr., Atlanta, Ga., for petitioner.

W. Davis Hewitt, John C. Walden, Don A. Langham, Robert S. Stubbs, III, Asst. Attys. Gen., Arthur K. Bolton, Atty. Gen. of Georgia, Atlanta, Ga., for respondent.

## ORDER

HAROLD L. MURPHY, District Judge.

Bruce McBryar, a state prisoner confined at the Colony Farm Correctional Institute, Hardwick, Georgia, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In February, 1978, petitioner plead guilty in the Superior Court of Whitfield County, Georgia, to armed robbery and was sentenced to seven years imprisonment. Following his imprisonment, petitioner filed a petition for a writ of habeas corpus in the Superior Court of Butts County. Hearings were held on May 11, and June 8, 1978, but petitioner's motion to dismiss without prejudice was granted before a ruling on the merits of the petition was made. Petitioner then filed a petition

in the Superior Court of Baldwin County, pursuant to which a hearing was held on November 8, 1978. After the relief sought was denied, petitioner applied for a certificate of probable cause to appeal and was denied. The petition in this Court followed. A hearing was held before a Magistrate who filed a Report and Recommendation adverse to the petitioner. On January 8, 1981, a hearing was held in this Court.

## I.

### FINDINGS OF FACT

1. Following his arrest for armed robbery, Bruce McBryar retained Joe Wild, a Chattanooga attorney, to represent him.

2. Joe Wild informed Bruce McBryar that if McBryar would cooperate with the prosecutors, the prosecutors would get him probation.

3. Joe Wild was personally acquainted with one of the victims of the robberies which were allegedly perpetrated by his client, Bruce McBryar.

4. Joe Wild advised Bruce McBryar to talk with the prosecutors whenever the prosecutors requested information. Wild was aware that McBryar spoke with prosecutors on numerous occasions when Wild was not present.

5. Joe Wild advised Bruce McBryar to testify for the prosecution at the trials of his confederates.

6. Joe Wild advised Bruce McBryar to plead guilty in both Walker and Whitfield Counties to charges of armed robbery.

7. Joe Wild advised Bruce McBryar that by pleading guilty to the charges of armed robbery, after having cooperated with the prosecutors, he would get probation.

8. Bruce McBryar plead guilty in Whitfield County to the armed robbery charges and was subsequently sentenced to seven years in prison.

9. The guilty plea transcript shows that petitioner stated his pleas were voluntary and that he had not been threatened or pressured into pleading guilty nor induced by any promise.

10. Joe Wild made no statement at the Whitfield County sentencing hearing after the Judge set the sentence at seven years.

11. A concurrent sentence was imposed by the Superior Court in Walker County.

12. Joe Wild was not aware that a guilty plea was not final until signed by the Judge and that a guilty plea could be withdrawn until signed by the Judge, Ga.Code § 27–1404.

13. Joe Wild was not aware that a defendant could file a motion for reduction of sentence to the sentencing judge, Ga.Code § 26–2502.

14. Joe Wild made no post-sentence motions whatsoever.

15. The special prosecutor in the Whitfield County cases was Erwin Mitchell.

16. At no time did Erwin Mitchell tell Joe Wild or Bruce McBryar that McBryar would get probation, or that Mitchell would recommend to the Superior Court Judge that McBryar should get probation.

17. Erwin Mitchell did inform Judge Temple, the sentencing judge in Whitfield County, that McBryar had cooperated with the prosecution, as Mitchell promised he would do.

## II.

### CONCLUSIONS OF LAW

■ The Magistrate concluded, as does this Court, that the petitioner did not receive a full and fair hearing in the State Courts. At the Baldwin County hearing, the only participant of the guilty plea proceedings to testify was Bruce McBryar. Neither Erwin Mitchell nor Joe Wild were present. The testimony of Bruce McBryar's wife was excluded as hearsay and cumulative. A brief portion of the Butts County hearing was read into the record. Mr. McBryar was not represented by counsel. It is clear from reading that transcript that pertinent and accurate findings of fact could not be reached without further inquiry. In *Sumner v. Mata*, —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) the

Supreme Court cautioned the lower federal judiciary to observe strictly the requirements of 28 U.S.C. § 2254(d), and to disturb the findings of a state court only under the circumstances provided in § 2254(d)(1)–(8). The Court holds (1) that the exclusion of Mr. McBryar's wife's testimony, the absence of any live testimony by Mr. Wild and the absence of counsel to aid Mr. McBryar all constitute a fact finding procedure which was not adequate to afford a full and fair hearing, § 2254(d)(2); that the material facts were not adequately developed at trial, § 2254(d)(3); that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding, § 2254(d)(6); and that the factual determinations made by the state court are not fairly supported by the record, § 2254(d)(8).

 Furthermore, the resolution of the issue of effective assistance of counsel presents a mixed question of fact and law. *Davis v. Heyd*, 479 F.2d 446, 450 (5th Cir. 1973); *Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976). As the Fifth Circuit stated,

Regardless of the thoroughness of state fact-finding procedures, considerations of comity do not obligate federal courts in habeas corpus cases to defer to state determinations on matters of federal law.

*West v. State of Louisiana*, 478 F.2d 1026, 1031–32 (5th Cir. 1973). The conclusion of the state trial judge on the issue of effective assistance of counsel is not, therefore, enshrouded with § 2254(d)'s presumption of correctness. Had the state trial judge endeavored to make findings of fact, such as what the attorney actually did for his client, those facts would be presumed correct. However, the transcript of the Baldwin County proceeding reveals that other than finding that Bruce McBryar was a state prisoner, the judge made no findings of fact upon which the conclusions were based. *See, Mason v. Balcom, supra,* 722–23.

It was therefore proper for this Court to hold a thorough evidentiary hearing in order to determine the circumstances surrounding Mr. McBryar's plea of guilty in the state courts.

2. Having found that the prosecutor did not make a bargain to seek probation, the Court need not address the issues raised by the petitioner which are premised on such a finding. That is, the line of cases spawned by *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) are not relevant.

██ 3. The petitioner did not receive the effective assistance of counsel and his plea of guilty was consequently not intelligent and voluntary. In assessing the effectiveness of Joe Wild, the fact that he was retained, rather than appointed, is of no import. In *Cuyler v. Sullivan*, 446 U.S. 335, 343–45, 100 S.Ct. 1708, 1715–16, 64 L.Ed.2d 333 (1980), the Court stated

Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself ... When a State obtains a criminal conviction through such a trial, it is the State that unconstitutionally deprives the defendant of his liberty.... Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.

The dual standard for gauging the effectiveness of retained and appointed counsel established by *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975) (en banc) is therefore no longer valid law.

██ McBryar was sentenced pursuant to a plea of guilty. A guilty plea is a "grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed. 747 (1970). Such a plea constitutes a waiver of several basic rights including the right to trial by jury, the privilege against self-incrimination, and the right to confront one's accusers. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). It is "more than an admission of conduct; it is a

conviction." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Brady, supra*, 397 U.S. at 748, 90 S.Ct. at 1469.

To waive these fundamental rights by a plea of guilty, the accused must make an informed, knowledgeable, and voluntary decision. He *must be aware* of the relevant circumstances and *likely consequences. Cf. Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938). *Brady, supra*, 397 U.S. at 748, 90 S.Ct. at 1468. In *Brady*, the Court observed that guilty pleas would not be sanctioned but for the caution with which trial courts accept them:

[It is] our expectation that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants *with adequate advice* of *counsel ...*

*Brady, supra* at 758, 90 S.Ct. at 1474. (emphasis supplied).

Fifty years ago the Supreme Court admonished trial courts to exercise the utmost caution in accepting the defendant's waiver of trial by jury:

Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and *intelligent* consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion. . . .

*Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); *see, Adams v. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942). Similarly, Judge Tuttle articulated the test for assessing the validity of a plea of guilty:

[A] plea of guilty entered by one fully aware of the direct consequences, including the *actual value of any commitments made to him by* the court, prosecutor, or *his own counsel*, must stand . . .

*Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc).

The role of counsel in the guilty plea is significant. The "threshold right to the assistance of counsel is no less momentous to an accused who must decide whether to plead guilty than to an accused who stands trial. *Von Moltke v. Gillies*, 332 U.S. 708, 721 [68 S.Ct. 316, 322, 92 L.Ed. 309] (1948)." *Colson v. Smith*, 438 F.2d 1075, 1078 (5th Cir. 1971). *Cf. Herman v. Claudy*, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956).

In *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the Court upheld the sentence of a prisoner who, prior to pleading guilty, was allegedly coerced into giving a confession. The Court held that the guilty plea was still valid: the confession did not taint the plea, and the defendant's counsel's failure to recognize that the confession would be inadmissible if the case went to trial was not grounds for overturning the conviction:

Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. On the one hand, uncertainty is inherent in predicting court decisions; but on the other hand defendants facing felony charges are entitled to the effective assistance of counsel... [I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and ... judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts.

*id.* at 770–71, 90 S.Ct. at 1448–49.

The Sixth Amendment's guarantee of counsel was extended to the earlier stages of criminal proceedings when a guilty plea might be entered in *Hamilton v. Alabama*,

368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961):

> When one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice resulted [citations omitted]. In this case ... the degree of prejudice can never be known. Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently.

id. at 55, 82 S.Ct. at 159; *White v. Maryland*, 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963); *Arsenault v. Massachusetts*, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968).

The Court has long recognized that the right to counsel "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty." *Johnson v. Zerbst, supra*, 304 U.S. at 462–63, 58 S.Ct. at 1022. The defendant "requires the guiding hand of counsel at every step in the proceedings against him." *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932).

In *Colson v. Smith, supra*, the Fifth Circuit noted, "[o]ne cannot read the Supreme Court's opinions in *McMann, Parker* [*v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1979)] and *Brady, supra*, without being impressed by the significance the Court attached to the *role of counsel* in the process of deciding how to plead." *Colson, supra*, at 1079. This Court would add that the decisions in *White, Claudy* and *Hamilton* indicate also that in evaluating the voluntariness of the plea, the Court must consider the effectiveness of counsel. As the Supreme Court in *Argersiger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) stated,

> Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as felony cases. Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so

that he is treated fairly by the prosecution.

The Fifth Circuit has addressed the issue of effective assistance of counsel at the guilty plea proceeding on a number of occasions. *See, e. g., Lamb v. Beto*, 423 F.2d 85 (5th Cir. 1970); *Walker v. Caldwell*, 476 F.2d 213 (5th Cir. 1973); *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974); *Lee v. Hopper*, 499 F.2d 456 (5th Cir. 1974); *Collins v. Green*, 505 F.2d 22 (5th Cir. 1974); *Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976); *Flores v. Estelle*, 578 F.2d 80 (5th Cir. 1978); *Carbo v. United States*, 581 F.2d 91 (5th Cir. 1978); *United States v. Crook*, 607 F.2d 670 (5th Cir. 1979).

> Reasonably effective assistance is an easier standard to meet in the context of a guilty plea than in a trial, but counsel still must render competent service ... It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly ... He must actually and substantially assist his client in deciding whether to plead guilty ... It is his job to provide the accused an 'understanding of the law in relation to the facts' ... The advice he gives need not be perfect, but it must be reasonably competent ... His advice should permit the accused to make an informed and conscious choice ... In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice.

*Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974).

Of course, the Constitution does not guarantee every criminal defendant the assistance of perfect, errorless counsel, or counsel judged by hindsight. *Lamb v. Beto*, 423 F.2d 85, 87 (5th Cir. 1970); *McKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960). Nor will the Court grant habeas relief upon a mere showing that the defense counsel's strategy foundered. *Rutledge v. Wainwright*, 625 F.2d 1200, 1203 (5th Cir. 1980). Even an erroneous sentence *estimate* by defense counsel does not vitiate the voluntariness of

the defendant's plea. *Scott v. Mancusi*, 429 F.2d 104 (2d Cir. 1970).[1]

 The record is clear in this case that McBryar was completely unaware of the consequences of his plea because of the misrepresentations made by his own counsel. There was never any indication from the special prosecutor's office that McBryar would get probation or a suspended sentence. Wild, in effect, induced a guilty plea by assuring McBryar that his cooperation would ensure probation.

 The Court focuses on the state of mind of the defendant when he entered his plea. It was not a plea made intelligently, and with awareness of the consequences.[2] It was a plea entered under the *reasonable* (because of his attorney's misrepresentations) but mistaken belief that he would not serve time. His plea did not reflect an informed and conscious choice.

The integrity of the guilty plea hearing was tainted by the incompetent assistance of defendant's counsel.

> When [the] system [of competent counsel advising a defendant about a plea of guilty] functions satisfactorily, it is both fair and reasonable to expect that defendant who has made his choice and received whatever benefits flow therefrom be required to live by that choice. In any particular case in which the system fails, however, it is the court's duty to supply relief.

*Colson v. Smith*, 438 F.2d 1075, 1079 (5th Cir. 1971); *Walker v. Caldwell*, 476 F.2d 213, 219 (5th Cir. 1973).

ACCORDINGLY, petitioner's application for a writ of habeas corpus is GRANTED; The State of Georgia has the option, of course, of retrying McBryar, at which time he will be allowed to replead.

---

1. Respondent places undue reliance on the *Mancusi* decision in light of the findings of fact in this case. In *Mancusi*, the Court of Appeals emphasized that defendant's counsel expressed *hope* that the sentence would be favorable if a guilty plea was entered, and that counsel never made any guarantees of leniency. In this case, in contrast, the Court has found that Wild, by design or ignorance, made blatantly untrue assertions about the consequences of pleading guilty.

2. The recitals in the record of the guilty plea hearing which indicate that the plea was not induced by threats or promises are not conclusive. *Herman v. Claudy*, 350 U.S. 116, 121, 76 S.Ct. 223, 226, 100 L.Ed. 126 (1956); *Flores v. Estelle*, 578 F.2d 80, 83 (5th Cir. 1978).