666 P.2d 94

**STATE of Arizona, Petitioner,**

v.

**Lee Roy LAMAS, Respondent.**

**Nos. 1 CA–CR 6152–PR,
1 CA–CR 6153–PR.**

Court of Appeals of Arizona,
Division 1, Department D.

June 2, 1983.

Thomas E. Collins, Maricopa County Atty. by Mark Kennedy, Deputy County Atty., Phoenix, for petitioner.

Henry Zalut, Phoenix, for respondent.

## OPINION

MEYERSON, Judge.

In its petition for review, the state seeks review of the trial judge's ruling setting aside the plea of guilty entered by respondent Lee Roy Lamas pursuant to a plea agreement on April 24, 1978.

### I. FACTS

Lamas and his two companions were originally charged in an indictment filed on February 9, 1978 (Cause No. CR–100897). Lamas was charged with kidnapping with intent to commit rape; assault with a deadly weapon; rape, first degree; and lewd and lascivious acts. An allegation of a prior conviction was later added to the indictment. In a plea agreement, Lamas pled guilty to assault with a deadly weapon and rape, first degree. In return for the plea, the state agreed to dismiss the remaining charges and to withdraw the allegation of a prior conviction for assault with intent to commit rape in the related action (Cause No. CR–92650).

As punishment for the crime, Lamas was sentenced to concurrent 15 to 45-year terms. Because of the special sentencing conditions for assault with a deadly weapon under the former criminal code, Lamas was not eligible for suspension or commutation of sentence, pardon or parole, until he had served the minimum sentence actually imposed.

On November 4, 1980, Lamas filed a petition for post-conviction relief and an evidentiary hearing was eventually held in 1982. Following the hearing, the judge ruled that Lamas' plea of guilty had been induced by his former counsel's promise that he would receive a five-year sentence and be eligible for good-time credits if he entered into the plea agreement. Following the trial judge's initial ruling on April 20, 1982, the state filed a motion for clarification, and a motion for rehearing. After a subsequent hearing on that motion, held on May 14, 1982, the trial judge again ruled that the plea agreement was entered into upon inadequate information relating to the sentence Lamas would receive.

At the evidentiary hearing, Lamas' former counsel, W. Clifford Girard, Jr. testified, as well as Lamas, two of his sisters, his father, and a minister acquainted with the family. Lamas and his family testified that Girard promised that if Lamas agreed to enter the guilty plea he would receive a five-year sentence. His trial counsel emphatically denied that any such promise was made.

At the hearing on May 14, 1982, the trial court made the following observations:

> It remains my conviction on the basis of the evidence presented that the defense attorney for Mr. Lamas did not do an adequate job of informing him of what the sentence would be. Problem number one.

> Problem number two: The promise of good time credits across the board for Mr. Lamas, coupled with the suggestion that he was going to get a five-year sentence resulting in the possibility that he would be released in two and a half years, I think, was grossly inadequate in view of the fact that he got a sentence many times greater than that and had to be given a sentence greater than that.

> The third problem—those two problems are not necessarily fatal.

> The third problem was that the sentencing judge at the time of the plea did not go into sufficient detail to correct all of those problems. I am convinced, Mr. Kennedy, that there was a problem with the assault with a deadly weapon. I am also at the moment pretty convinced that there was a problem with the rape charge.

Later, the county attorney attempted to clarify the judge's ruling and the following colloquy ensued:

> MR. KENNEDY: All right. Maybe the secret promise issue is not adequately defined. I don't know what your definition is of the secret promise. Mine is that Lamas was promised if he would sign the

plea agreement he would get a five-year sentence and be out on the street; right?

THE COURT: Right. I—what I have found is that that's what Mr. Girard told Mr. Lamas. I have not found that Mr. Deutsch was a party to that agreement, in other words no secret promise with the County Attorney's Office, but ineffective advice given to Mr. Lamas by Mr. Girard regarding his sentence.

MR. KENNEDY: So when your minute entry says that you found that there was no secret promise, you were saying that there was· a promise of a five-year sentence made by Girard to Lamas but Deutsch didn't participate?

THE COURT: Exactly.

Finally, the court made the following statement:

THE COURT: I have found inadequate advice given to Mr. Lamas by Mr. Girard regarding his five-year sentence, which I think is tantamount to a promise, and by Mr. Girard that he was going to receive a five-year sentence, that he would be eligible in an unqualified way for good time credits across the board on both the charges so he would be possibly eligible for release in two and a half years.

Had those matters been explicitly addressed by Judge O'Connor at the time of the sentencing in a way that Mr. Lamas could understand them, perhaps, it would not have been fatal.

Following the hearing and rulings on May 14, 1982, the trial judge set aside the guilty plea, ordered Lamas' immediate release from the Arizona State Prison and directed that he be returned to the custody of the Maricopa County Sheriff to await trial.

Initially, we note that at the May 14, 1982 hearing, the county attorney agreed that, at least with respect to the assault with a deadly weapon charge, the plea violated Rule 17.2, Ariz.R.Crim.P., and *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In the motion for rehearing, the county attorney objected to the court's finding that the involuntariness of the plea applied to both the assault with

a deadly weapon count and the rape, first degree count.

The state's argument proceeded on the assumption that the only defect was that Lamas had not been advised of the special sentencing provision relating to the assault with a deadly weapon charge. The state assumed that because that charge was the only one that carried a special sentencing provision, it was the only count which was defective. Furthermore, the state argued that the plea itself was not defective because there was no prejudice shown to Lamas because of the sentence actually imposed, relying on *State v. Ellis,* 117 Ariz. 329, 572 P.2d 791 (1977). These were the only issues raised in the motion for rehearing.

We think a careful reading of the colloquy between the trial judge and counsel on May 14, 1982, and the court's subsequent rulings, leave little doubt but that the trial court found more than a technical violation of Rule 17, Ariz.R.Crim.P., and a failure to provide adequate, accurate information on special sentencing provisions. The state's argument fails to address the most significant and telling finding of the trial court— Lamas' guilty plea was induced by a promise made by his counsel that the maximum sentence he would receive if he agreed to plead guilty would be no more than five years and that with good time credits he would be out in less than three years.

Recently, the supreme court in *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 at 1224 (Ariz.Sup.Ct.1983), in defining "abuse of discretion" stated:

Something is discretionary because it is based on an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the trial judge, who has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and who can better assess the impact of what occurs before him. Where a decision is made on that basis, it is truly discretionary and we will not substitute our judgment for that

of the trial judge; we will not second-guess. (citations omitted). The facts regarding the promise of a maximum sentence of five years and Lamas' reliance thereon were all disputed matters at the hearing. The trial judge, after considering all of the testimony, chose to believe that Lamas had been promised a five-year maximum sentence and relied upon that promise in entering his plea of guilty.

We cannot say that the facts in this case demonstrate an abuse of discretion or that the evidence does not sufficiently support the trial court's findings. *State v. Byers,* 126 Ariz. 139, 141, 613 P.2d 299 (1980). The facts were conflicting and we must recognize that the trial judge had a more immediate grasp of all the facts of the case and an opportunity to see first-hand the parties, lawyers and witnesses. But as explained more fully below the trial judge failed to address one crucial fact necessary for the ultimate disposition of this matter. We now turn to discuss the legal issues presented by the trial judge's ruling.

## II. LAW

The central finding of the trial judge was that Lamas received "inadequate advice" from his counsel when counsel made a "promise" that Lamas would receive a five-year sentence and would be eligible for good time credits. We must determine whether under such circumstances, Lamas is entitled to have his plea agreement set aside.

■ It is by now elemental that effective assistance of counsel is just as necessary at the plea bargaining stage as at trial. *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948). "Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin,* 407 U.S. 25, 34, 92 S.Ct. 2006, 2011, 32 L.Ed.2d 530 (1972). A guilty plea is a "grave and solemn act to be accepted only with care and discernment." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct.

1463, 1469, 25 L.Ed.2d 747 (1970). Hence, a judge accepting a guilty plea must ascertain that the plea was entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama,* 395 U.S. at 242, 89 S.Ct. at 1711. Rule 17.3, Ariz.R.Crim.P.

■ Because an involuntary guilty plea violates due process of law, *Boykin v. Alabama,* 395 U.S. at 242–43, 89 S.Ct. at 1711–12, it is "important that the defendant be asked whether any promises were made other than promises relating to a plea agreement. Since discussions relating to a plea agreement could conceivably include improper remarks or inducements leading to a defendant's guilty plea, it is recommended that the defendant be questioned about such discussion." ABA, Standards for Criminal Justice, Standard 14–1.5. Commentary at 31 (1980).

In this case, the judge who accepted Lamas' change of plea did inquire of him whether any promises were made but not contained in the plea agreement and he replied "no." Likewise, Lamas stated to the judge that no one promised him what his sentence would be. At the hearing on his petition for post-conviction relief, however, he testified that he said no at the insistence of Mr. Girard.

■ Although a defendant " 'may not ordinarily' repudiate statements made to the sentencing judge" when the plea is entered, a guilty plea should not be "uniformly invulnerable to subsequent challenge ...." *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973). For example, in *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) despite the defendant's allocution to the trial judge that his lawyer had made no promises to him to influence his plea of guilty, the court nevertheless held that the defendant was entitled to an evidentiary hearing to determine whether the defendant's "representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentations by others as to make the guilty plea a constitutionally

inadequate basis for imprisonment." *Id.* at 75, 97 S.Ct. at 1629. The court found that although "[s]olemn declarations in open court carry a strong presumption of verity," the "barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable." *Id.* at 74, 97 S.Ct. at 1629. A defendant is not foreclosed by statements made to the judge if he alleges a reasonable explanation. *Edwards v. Garrison,* 529 F.2d 1374, 1377 (4th Cir. 1975), *cert. denied,* 424 U.S. 950, 96 S.Ct. 1421, 47 L.Ed.2d 355 (1976).

We turn now to the more narrow question of the circumstances when a lawyer's representation to a defendant with regard to his sentence will necessitate that a guilty plea be set aside. The good faith representation of counsel that the defendant will receive a lighter sentence than he actually received will not constitute grounds for reversal of a conviction or for permission to withdraw a plea of guilty. *E.g., Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir.1972); *State v. Williams,* 107 Ariz. 421, 425, 489 P.2d 231, 235 (1971). "A defendant's mistaken subjective impressions gained from discussions with his lawyer, absent substantial objective evidence showing such impressions to be reasonably justified, do not constitute sufficient grounds upon which to set aside his guilty plea." *State v. Pritchett,* 27 Ariz.App. 701, 703, 558 P.2d 729, 731 (1976).

There are, however, two circumstances in which a lawyer's representation to a defendant may require that the guilty plea be set aside. First, a lawyer's promise or guarantee to his client that the client will receive a particular sentence may induce the client to believe that a *sub rosa* agreement has been reached with the prosecutor or that the lawyer has a "special relationship with the . . . judge and had 'fixed' the sentence." *United States v. Marzgliano,* 588 F.2d 395, 398 (3d Cir.1978). *See, e.g., McAleney v. United States,* 539 F.2d 282 (1st Cir.1976); *Moorhead v. United States,* 456 F.2d 992 (3d Cir.1972); *cf. State v. Chavez,* 130 Ariz. 438, 636 P.2d 1220 (1981) (if parties to plea agreement were mistaken as to existence of material fact inducing agreement, defendant may withdraw guilty plea after sentencing).

The second circumstance concerns the case in which the lawyer's legal advice falls below the minimum standard of professional competence. "[I]f an attorney recklessly promises his client that a specific sentence will follow upon a guilty plea, or otherwise unfairly holds out an assurance of leniency in exchange for a confession of guilt, the question may arise whether such assurances were coercive, or whether such representation may be deemed constitutionally ineffective." *Wellnitz v. Page,* 420 F.2d 935, 936 (10th Cir.1970).

> When the misadvice of the lawyer is so gross as to amount to a denial of the constitutional right to the effective assistance of counsel, leading the defendant to enter an improvident plea, striking the sentence and permitting a withdrawal of the plea seems only a necessary consequence of the deprivation of the right to counsel. Deprivation of the constitutional right cannot be left unredressed.

*Strader v. Garrison,* 611 F.2d 61, 65 (4th Cir.1979). For example, in *McBryar v. McElroy,* 510 F.Supp. 706 (N.D.Ga.1981), the defendant was advised by his lawyer that if he pled guilty to the charge of armed robbery he would receive probation. The defendant was subsequently sentenced to seven years in prison. The court found that the attorney made "blatantly untrue assertions about the consequences of pleading guilty," *id.* at 712 n. 1, and concluded that the record was clear that the defendant was "completely unaware of the consequence of his plea because of the misrepresentation" made by the lawyer. *Id.* at 712. The court granted the defendant's writ of habeas corpus and vacated the guilty plea, while permitting the state to retry the defendant.

In *State v. City Court,* 131 Ariz. 236, 640 P.2d 167 (1981) the Arizona Supreme Court affirmed an order of a city magistrate setting aside a plea agreement because the defendant mistakenly thought a prior DWI conviction had occurred more than 24

months before the time of the acceptance of the guilty plea. The court held that a "person who pleads guilty without knowledge of the punishment that must be imposed has pled guilty under a mistake and misapprehension." 131 Ariz. at 237, 640 P.2d at 168. The court relied upon Rule 17.5, Ariz.R.Crim.P., which provides that a sentencing judge, may, in his discretion, "allow withdrawal of a plea of guilty ... when necessary to correct a manifest injustice." "The term manifest injustice is intended to include denial of effective assistance of counsel ...." Comment to Rule 17.5, Ariz.R.Crim.P.

## III. CONCLUSION

■ In this case, the trial judge found that Lamas received "inadequate advice" from his attorney which amounted to a "promise" that Lamas would receive a five-year sentence.[1] Although Lamas advised the judge at the hearing on his change of plea that no promises were made to him with respect to his sentence, at the hearing on his petition for post-conviction relief, he testified that his lawyer told him not to tell anybody that he would receive a five-year sentence.

Although the trial judge found that Lamas had been "promised" a five-year sentence, no findings were made with respect to trial counsel's alleged instructions to La-

mas—he should not mention the promise to anyone. Because we attach great importance to Lamas' allocution at the change of plea hearing that no promises were made, we refuse to set aside the plea agreement in the absence of specific findings by the trial judge on this important factual issue. Had trial counsel instructed Lamas not to reveal the "promise,"[2] the circumstances here would fit within the rule enunciated in *Blackledge v. Allison* and the plea agreement should be set aside.

Therefore, we remand this matter to the trial court. Within 30 days from the date of issuance of the mandate in this matter, the trial judge is to make findings with respect to the following question: Did Lamas' trial counsel advise or instruct Lamas not to reveal that any promise was made with regard to his sentence? Upon receipt of the trial court's finding, this court will enter an appropriate order.

HAIRE, P.J., and EUBANK, J., concur.

---

1. This case can be contrasted with *State v. Phillips,* 108 Ariz. 332, 333, 498 P.2d 199, 200 (1972) in which the court refused to set aside the plea agreement because there was "either a total absence of support in the record or an out-and-out contradiction in the record" of the defendant's contention that he was promised a lesser sentence.

2. It is unethical for a lawyer to assist his client in conduct which the lawyer knows to be fraudulent. Code of Professional Responsibility DR 7–102(A)(7) (1981).