710 P.2d 456

**STATE of Arizona, Appellee,**

v.

**Richard J. ANDERSON, Appellant.**

**No. 6622–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 9, 1985.

---

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Thomas Abram, Phoenix, for appellant.

GORDON, Vice Chief Justice.

We granted review in this case in order to examine the propriety of the trial court's refusal of defendant, Richard J. Anderson's request to withdraw a plea of no contest entered into with the state on April 26, 1983. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R. Crim.P. 31.19.

On March 14, 1983, the Maricopa County Grand Jury indicted defendant on three counts of sale of dangerous drugs and one count of knowingly possessing a dangerous drug for sale, all class two felonies. A.R.S. § 13–3404. The state then amended the indictment by allegations of prior felony offenses pursuant to *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980).

The facts giving rise to defendant's arrest and indictment are as follows: Defendant operated a business out of his home. R.J. Anderson Distributing Company sold herb food supplements known as A.P.R.H. Tea Balls (tea balls) imported from Hong Kong. Defendant marketed tea balls claiming the product provided relief from arthritis. On August 20, 1982, the Arizona Department of Public Safety (DPS) received information from a private citizen who reported ill effects after ingesting tea balls. DPS agents, in an undercover capacity, purchased tea balls from defendant and had samples analyzed by their crime lab. The samples were found to contain chlordiazepoxide (librium), a dangerous drug, pursuant to A.R.S. § 13–3401(6)(c)(v). The record is in dispute as to whether the drug was found in a usable quantity as only qualitative tests were performed by the crime lab. Defendant claims to have had numerous laboratory tests performed on tea balls, all testing negative as to librium.

Defendant's counsel and the state agreed to have tea ball samples tested by an independent laboratory, the Center for Human Toxicology in Salt Lake City, Utah. The samples were submitted to the lab by DPS Agent James Welty. Prior to receiving the final test results from Salt Lake City the defendant entered into a plea agreement with the state. Defendant pled no contest to all four counts as class one misdemeanors. The parties stipulated to the following terms:

"Sentence shall be three years probation for each count with no jail as a condition and a $500.00 plus $185.00 surcharge (total of $685.00) fine for each count, said fine being satisfied by settlement and release dated April 22, 1983 (marked A attached hereto). Total fine is $2,740.00. (Including *surcharge.*)"

The settlement and release referred to the receipt of defendant's 1974 MG automobile received in full settlement and satisfaction of all claims, actions or demands which arose in related civil forfeiture proceedings concerning defendant's car and mobile home where tea balls were found.

In a subsequent report from the Salt Lake City Lab it was stated that no chlordiazepoxide was present in any of the submitted samples. Based on these reported findings defendant filed a motion to withdraw his no contest plea on May 23, 1983.

The trial court conducted an evidentiary hearing on August 1, 1983, with experts from each side reaching opposite conclusions as to the presence of chlordiazepoxide in the tea balls. A microbiologist testified on behalf of the defendant. He tested a sample of the tea balls and found no drugs present. Next, a forensic toxicologist from the Salt Lake City lab testified on defendant's behalf. While his initial testing done prior to the plea indicated the presence of the drug, on retest no amounts of the drug were present. The explanation for the initial positive results was a malfunction in

the lab's gas chromotography/mass spectrometry equipment. He was, however, quite emphatic that the final tests were correct. Defendant's motion to withdraw his plea was based on this final test and was termed "newly discovered evidence" for purposes of the motion. *See State v. Irwin,* 106 Ariz. 536, 479 P.2d 421 (1971).

The state called five witnesses to substantiate its allegation that chlordiazepoxide was present in usable quantities in the tea balls. All the witnesses testified as to the presence of the drug in the samples. It is interesting to note that initial testing done by the Food and Drug Administration found no presence of drugs in the tea balls. Subsequent tests by the FDA reported positive results.

The trial court reviewed the plea proceedings and on August 3, 1983, ruled that substantial justice was done by the plea and there was no manifest injustice which needed to be corrected. The defendant was sentenced according to the plea agreement on August 12, 1983.

The defendant filed a timely appeal and subsequently filed a petition for post conviction relief. The appeal was stayed while defendant's petition for post conviction relief was considered and ultimately denied by the trial court. Both matters were consolidated for review on appeal. Defendant's counsel was permitted to withdraw from the proceedings and defendant filed a brief in *propria persona.* In a memorandum decision filed May 23, 1985, the Arizona Court of Appeals, Division One, affirmed the judgment and sentence. On June 6, 1985, defendant filed a petition for review to this Court. The sole issue on review is whether defendant received ineffective assistance of counsel in forming the basis for entering into his plea of no contest.

THE PLEA AGREEMENT

Throughout the course of events leading up to defendant's plea he was tendered several plea offers by the state. Defendant rejected each plea offer, vehemently proclaiming that the tea balls contained no chlordiazepoxide. On April 26, 1983, the parties were at court for a pretrial conference at which time the state tendered another plea agreement. After initially rejecting the offer, defendant agreed to the plea based on his belief that if the results from Salt Lake City were negative, he could withdraw the plea. Here is where the major confusion exists.

On April 26, 1983, the following colloquy took place between the trial court and defendant prior to the court's acceptance of the plea:

"THE COURT: ....

All right. It indicates you wish to enter a plea of guilty to the charge of Count I, II, III and IV, all Possession of Dangerous Drugs all being class 1 misdemeanors. Are those the four counts that you wish to enter a plea of guilty to here today?

THE DEFENDANT: I am pleading with my attorney's advice, yes.

MR. RUBIN: Your Honor, if it please the Court, this is No Contest.

. . . .

THE COURT: And did anyone use any force or threats on you either to get you to sign this agreement or to agree to the terms of the agreement?

THE DEFENDANT: No, Sir.

THE COURT: All right. No one used any force or coercion or anything like that to get you to do that?

THE DEFENDANT: Certainly not. Only convincing arguments, Your Honor.

. . . .

THE COURT: All right. And you wish to waive those [rights] and give those up and enter a plea of No Contest to these four counts?

THE DEFENDANT: On my attorney's advice, I do, yes.

. . . .

THE COURT: .... So I am saying, regardless of whether you believe you are guilty or not guilty, that you feel the benefits of the plea agreement are to your advantage and that is why you are pleading guilty to these four counts?

THE DEFENDANT: Yes. I believe that it's economically feasible to do so and—
THE COURT: You're doing it voluntarily?
THE DEFENDANT: I am doing it voluntarily, that is correct, yes.

. . . .

THE COURT: You wish to plead No Contest to the four Counts?
THE DEFENDANT: On my attorney's advice."

Defendant claims that prior to his acceptance of the tendered plea agreement his trial attorney (different from counsel on appeal) told him that he could withdraw his plea based on negative results from the Salt Lake City lab and to do so was simply a formality. At an evidentiary hearing conducted on April 11, 1984, defendant's trial counsel was examined. He testified that defendant asked prior to acceptance if the plea could later be withdrawn. As to what would happen if the Salt Lake City tests were negative,

"And I then advised him that he would have the opportunity to move to withdraw his plea . . . ."

Trial counsel further testified that prior to the acceptance of the plea there was no discussion with defendant regarding the permissible grounds for withdrawal of a plea or the legal standard (manifest injustice) used by the judge. Defendant testified that had he known that withdrawal was not a mere formality and that it was discretionary with the trial court he would not have entered into the plea.

LAW

A plea of guilty is a waiver of several constitutional rights, including the fifth amendment privilege against compulsory self-incrimination and the sixth amendment rights to insist on a jury trial and to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969). Like a guilty plea a plea of no contest "is an admission of guilt for the purposes of the case". *Hudson v. United States*, 272 U.S. 451, 455, 47 S.Ct. 127, 129, 71 L.Ed. 347 (1926); *State v. Stewart*, 131 Ariz. 251, 254, 640 P.2d 182, 185 (1982). It is clear, then, that there is no significant difference between a plea of guilty with a protestation of innocence and a plea of no contest, because by entering a plea of no contest, "a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." *Id.; North Carolina v. Alford*, 400 U.S. 25, 35, 91 S.Ct. 160, 166, 27 L.Ed.2d 162, 170 (1970). For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425 (1969).

A waiver of the above-mentioned rights is valid only if made intelligently and voluntarily so that an accused who has not received reasonably effective assistance of counsel in deciding to plead guilty cannot be bound by his plea. *McCarthy v. United States, supra; Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir.1984). *See also* 17 A.R.S. Rules of Criminal Procedure, rules 17.1, 17.2 and 17.3. Effective assistance of counsel is just as necessary at the plea bargaining stage as at trial. *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948); *State v. Lamas*, 136 Ariz. 349, 353, 666 P.2d 94, 98 (App.1983).

Rule 17.5 governs withdrawal of pleas in Arizona and the standard to be applied. It reads as follows:

**"Rule 17.5 Withdrawal of plea**

The Court, in its discretion, may allow withdrawal of a plea of guilty or no contest when necessary to correct a manifest injustice. Upon withdrawal, the charges against the defendant as they existed before any amendment, reduction or dismissal made as part of a plea agreement, shall be reinstated automatically."

■ The comment to the rule states that the term "manifest injustice" is intended to include the denial of effective assistance of counsel. Although withdrawal is discretionary with the trial court and will not be disturbed on appeal absent a clear abuse of discretion, a motion to withdraw a plea should be liberally exercised in favor of permitting withdrawal where there is any showing justice will be served thereby. *State v. Gibbs*, 6 Ariz.App. 600, 435 P.2d 729 (1968).

The Arizona Court of Appeals in *State v. Lamas, supra,* reviewed a request to withdraw a guilty plea allegedly entered into based on an inaccurate promise by petitioner's attorney. The Court noted with approval that:

"When the misadvice of the lawyer is so gross as to amount to a denial of the constitutional right to the effective assistance of counsel, leading the defendant to enter an improvident plea, striking the sentence and permitting a withdrawal of the plea seems only a necessary consequence of the deprivation of the right to counsel. Deprivation of the constitutional right cannot be left unredressed. (citation omitted)"

136 Ariz. at 354, 666 P.2d at 99, *citing Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir.1979).

We must decide if the advice defendant received from his trial counsel is tantamount to ineffectiveness of counsel under the test of *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985). The *Nash* test will be employed since defendant's case was pending on appeal as of the effective date of the *Nash* decision. *See State v. Gerlaugh*, 144 Ariz. 449, 456, 698 P.2d 694, 701 (1985).

■ In deciding whether counsel was ineffective and whether such ineffectiveness warrants a withdrawal of the plea, this Court applies a two-pronged test as recently outlined in State v. Salazar, [slip op. No. 6476] filed September 17, 1985, and *State v. Gerlaugh, supra;* 1) was counsel's performance reasonable under all the circumstances, i.e. was it deficient? *State v. Nash, supra,* and 2) was there a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different," the prejudice requirement. *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984).

■ Defendant's attorney testified that he informed defendant that should the laboratory results ultimately be favorable, he would have "an opportunity to move to withdraw his plea." Counsel also testified that he did not inform defendant that a finding of manifest injustice would be necessary before the plea would be withdrawn. While the trial court is not required to advise a defendant that his guilty or no contest plea can only be withdrawn to correct a manifest injustice, *State v. Dixon*, 125 Ariz. 127, 608 P.2d 64 (App.1980), this is presumably because defense counsel has fully discussed with his client the import and consequences of entering such a plea.

■ We believe a lay person hearing the attorney's statements, without more, would understand his advice to mean a motion to withdraw would be routinely granted. This is especially true in this case where defendant had previously rejected numerous plea offers, questioned counsel as to withdrawal, and the test results from Salt Lake City did, in fact, render favorable results. While it is true that a defendant must not tell the judge that his plea is entered into voluntarily if it is not, *State v. Hamilton*, 142 Ariz. 91, 688 P.2d 983 (1984), defendant's responses to the trial judge are not necessarily inconsistent with a belief that he could withdraw his plea at a later date. The record as a whole indicates that defendant would have rejected the plea and proceeded to trial had he been advised as to the true consequences of the plea and subsequent withdrawal procedures.

We agree with the dissent in the Court of Appeals opinion. [Memorandum Decision of May 23, 1985 at p. 11] (His advice that appellant could *move* to change his plea if the hoped for evidence developed was technically correct but incomplete and misleading.) (emphasis in original)

352

The majority of the Court of Appeals found that defendant's counsel did an appropriate job in negotiating the plea in light of the severity of the charges and possible sentence. We agree that the defendant entered into a very favorable agreement; however, the Court of Appeals focused only on the negotiating skills of counsel. It was not counsel's negotiating skills which were deficient, but rather the incomplete and misleading omissions regarding the entrance into the plea which satisfy the first prong of the *Nash* test. It is well settled that a no contest plea can only be accepted if voluntarily and intelligently made. 17 A.R.S. Rules of Criminal Procedure, Rule 17.1(b); *Boykin v. Alabama, supra.* We believe defendant could not have entered into the plea intelligently based on the above advice and omissions. Under the legal and factual circumstances of this case, the incorrect or incomplete legal advice given defendant by counsel and thereafter reasonably relied upon by defendant, constitutes ineffective assistance of counsel. *See State v. Smith,* 136 Ariz. 273, 279, 665 P.2d 995, 1001 (1983) ("We do not believe that advising a client incorrectly about the black letter Rules of Criminal Procedure, especially in a matter of life and death, can be called minimally competent representation"); *Strader v. Garrison,* 611 F.2d 61, 64 (4th Cir.1979) ("The judgment of conviction must be vacated when it appears, as here, that the guilty plea would never have been tendered if the defendant had been properly advised by his lawyer"); *but see Hutchens v. State,* 675 S.W.2d 522, 524 (Tex.1983) ("Additionally, appellant himself testified that his attorneys informed him that he had a right to *ask* for and *request* a withdrawal of his plea. This statement, coupled with Licata's testimony, indicates appellant's awareness that a plea withdrawal was strictly discretionary with the court and not a matter of right.") (emphasis in original)

We also believe that the second prong of the test is satisfied in that "but for counsel's unprofessional errors the result of the proceedings would have been different." *State v. Lee, supra. Strickland v. Wash-ington,* 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). We believe the proceedings would have been different because defendant would never have entered into the plea agreement had he known the high standard the trial could would use and the discretionary nature of any such ruling. *Cf. Hill v. Lockhart,* — U.S. —, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), *aff'g* 764 F.2d 1279 (8th Cir.1984) (Finding no ineffective assistance of counsel in the plea bargain, but noting that "[p]etitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial").

There is no dispute as to the fact that defendant's counsel did not inform defendant about the discretionary nature of plea withdrawal and the high standard involved. Defendant's request to withdraw his no contest plea was timely, *State v. Hanley,* 108 Ariz. 144, 493 P.2d 1201 (1972) and he should be allowed to withdraw his plea and the charges against him as they existed prior to the plea shall be reinstated automatically. 17 A.R.S. Rules of Criminal Procedure, Rule 17.5. We believe defendant has a right to plead or go to trial based on competent, thorough advice and accordingly the opinion of the Court of Appeals is vacated and this matter is remanded to the trial court for proceedings not inconsistent with this opinion.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.