881 P.2d 1196

Steven Renard WASHINGTON,
Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Michael J. O'Melia, a judge thereof, Respondent Judge,

STATE of Arizona, ex rel. Richard ROMLEY, Maricopa County Attorney, Real Party in Interest.

No. 1 CA–SA 94–0099.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 20, 1994.

Dean W. Trebesch, Maricopa County Public Defender by David I. Goldberg, Deputy Public Defender, Phoenix, for petitioner.

Richard M. Romley, Maricopa County Atty. by Arthur Hazelton, Deputy County Atty., Phoenix, for real party in interest.

OPINION

FIDEL, Presiding Judge.

Petitioner Steven Washington pled no contest to two counts of leaving the scene of an injury accident. Washington brings this special action to challenge the trial court's refusal to allow him to withdraw his plea. We conclude that the trial court abused its discretion. We hold (1) that a no contest plea is subject to the same withdrawal standards as an *Alford*[1] plea, and (2) that Washington should have been permitted to withdraw his plea when a previously unknown witness came forward with exculpatory evidence after the plea but before the date of sentencing.

BACKGROUND

When gunshots were fired at a Phoenix roller skating rink in the early morning of April 18, 1992, Steven Washington, a bystander, fled in his car. Speeding westward from the skating rink at 4451 East Oak Street, Washington ran a red light at the 44th Street intersection. In the resulting four-car collision, one person was killed and more were injured. Washington left the scene of the collision at about 2:30 a.m. The state maintains that he left voluntarily; Washington maintains that he was carried away unconscious by an acquaintance.

About 3:00 p.m. on the same date, Washington phoned the police to turn himself in. When he appeared for questioning, Washington told the police that he had blacked out after the accident and awakened around 8:00 a.m. at his grandmother's house. He said family members told him he was taken there unconscious by a man named Gary Miles.[2]

Fourteen months later, in June of 1993, Washington was indicted on two counts of leaving the scene of an injury accident, class six felonies, in violation of Ariz.Rev.Stat.Ann.

("A.R.S.") § 28–661. Washington pled not guilty and was granted several trial continuances for the reasons, among others, that his lawyer was ill, and his investigator could not locate Mr. Miles.

As the fourth trial setting approached and the defense investigator remained unable to find Miles, Washington decided to enter a plea agreement. On January 20, 1994, Washington pled no contest to the two counts charged. In return the state agreed that the sentences on each count would run concurrently, and the state agreed to drop its allegation of a prior felony conviction, an allegation that, if proven, would have precluded probation and increased the prison term. The trial court accepted the plea on the state's avowal that if trial were held, the state would produce witnesses who "observed the defendant driving, get out of his car and then leave the scene." Sentencing was set for February 17, 1994.

Before sentencing, Miles contacted Washington and confirmed that Washington was unconscious when Miles took him from the scene. A previously undiscovered witness, Ms. Wealthy La–Shawn Malone, also contacted Washington and corroborated Miles's version of events. After obtaining a continuance of sentencing, Washington moved to withdraw his plea. At a March 8 hearing, Ms. Malone testified that she was also fleeing from the skating rink on the night of the accident, and that she and her companions were "the first ones on the scene after the accident occurred." She had met Steven Washington before the accident but was better acquainted with his brother, a passenger in Washington's car. She stated:

> ... I checked the people in Steven's car for pulses and to see if they were breathing.
>
> And then I went over to the other car and we couldn't get the doors opened at all. So I went back to the passenger side, the man that was in the passenger side, and I was trying to get him conscious and

---

1. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970)

2. When the police had questioned the grandmother earlier, at approximately 11:00 a.m., she denied having seen Washington that morning.

Steven was unconscious. I couldn't wake him.

And I got the other man to talking. So another man pulled up, which was ... Gary Miles, and he started taking Steven out of the car. And I said, "Don't move him, because he might've internal injuries that you don't know about."

And he said, "Well, I have to get him out of here," and he dragged him and put in another car. And another man came and they were talking and I just saw the car pull off.

Ms. Malone was still at the accident scene assisting victims when the police arrived. She informed a policeman that Washington's friends had dragged him from the car unconscious and taken him away. Instead of pursuing that matter, however, the police questioned her about what she had seen of the shooting at the skating rink.

Asked by the court why "we're just hearing about what you saw within the last month," Ms. Malone responded:

[B]ecause I don't believe that Steven remembered that I was at the accident because he was unconscious. And his brother—I think he just remembered ... that I was there not too long ago.

At the close of the hearing, the trial court denied Washington's motion to withdraw his plea, entered judgment of guilt, and placed Washington on three years probation with four months in jail as a condition of probation. Although the court set April 8, 1994, as a deferred starting date for probation and the jail term, the court ordered that both would be stayed pending the outcome of appellate proceedings if either an appeal or petition for special action were filed before that date. After unsuccessfully moving for reconsideration, Washington filed this special action on April 1, 1994.

## JURISDICTION

▆ We accept jurisdiction for three reasons. First, this case presents an unsettled issue of statewide importance. No Arizona appellate court has yet determined whether the special standards bearing on motions to withdraw *Alford* pleas apply to no contest pleas as well. Second, the error here is clear. Third, in light of the clear error, there is no "equally plain, speedy, and adequate remedy by appeal" or petition for post-conviction relief. Ariz.R.P.Spec.Act. 1. When Washington pled no contest, he waived his right to direct appeal. Ariz.R.Crim.P. 17.-1(e). And though he might pursue review by petition for post-conviction relief, *id.;* Ariz. R.Crim.P. 32.1, during the pendency of such proceedings, Washington would undoubtedly serve his entire term of probationary incarceration—a term stayed for the duration of this special action. For this combination of reasons, we exercise our discretion to resolve this matter now.

## STANDARD FOR WITHDRAWAL

A defendant is entitled to withdraw "a plea of guilty or no contest when necessary to correct a manifest injustice." Ariz.R.Crim.P. 17.5. Although the trial court has discretion to determine whether justice requires withdrawal, that discretion "should be liberally exercised.... Where there is any showing that justice will be served thereby, any doubt should be resolved in favor of withdrawing the plea." *State v. Corvelo,* 91 Ariz. 52, 54, 369 P.2d 903, 905 (1962) (citations omitted).

▆ *Alford* pleas may be withdrawn with even greater liberality. *State v. Dockery,* 169 Ariz. 527, 528, 821 P.2d 188, 189 (App.1991); *Duran v. Superior Court,* 162 Ariz. 206, 207, 782 P.2d 324, 325 (App.1989); *State v. Fritz,* 157 Ariz. 139, 140, 755 P.2d 444, 445 (App.1988). *Alford* pleas are tolerated but disfavored in Arizona. *Duran,* 162 Ariz. at 207, 782 P.2d at 325. When a defendant has expressly acknowledged his guilt in open court, the public can be relatively confident that its courts have not convicted an innocent person. The public lacks this assurance, however, when a defendant declines to acknowledge guilt and merely asserts that the benefits of a plea bargain outweigh the risks of conviction and steeper sentence that would attend a trial. Because an *Alford* plea is merely a risk/benefit calculation, not an admission of guilt, "[w]here there is ... an objective basis for defendant's reevaluation[,] withdrawal should be permitted." *Id.* at 208, 782 P.2d at 326 (victim recantation); *accord*

*Dockery,* 169 Ariz. at 529, 821 P.2d at 190 (terminal illness; no benefit in sentence-shortening bargain); *Fritz,* 157 Ariz. at 141, 755 P.2d at 446 (victim recantation).

The trial court rejected the argument that this lenient *Alford* plea withdrawal standard applies equally to no contest pleas. The state argues, and the trial court found, that an *Alford* plea is fundamentally different from a no contest plea because in the former the defendant affirmatively maintains innocence, and in the latter the defendant merely refuses to admit guilt. We hold that the trial court erred.

Our supreme court has recognized that, for purposes of acceptance of the plea, "there is no significant difference between a plea of guilty with a protestation of innocence [i.e., an *Alford* plea] and a plea of no contest." *State v. Stewart,* 131 Ariz. 251, 254, 640 P.2d 182, 185 (1982) (finding no prejudice resulting from trial court's designating and accepting as a no contest plea one that was intended as an *Alford* plea); *accord State v. Anderson,* 147 Ariz. 346, 350, 710 P.2d 456, 460 (1985). The United States Supreme Court earlier found, in upholding the constitutionality of the *Alford* plea, that there is no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence." *Alford,* 400 U.S. at 37, 91 S.Ct. at 167.

■ We now hold that, for the purpose of withdrawal, there is likewise no material difference between an *Alford* plea and a no contest plea. The reasons that warrant a particularly lenient withdrawal standard for *Alford* pleas apply equally to no contest pleas. Each rests only on the defendant's risk/benefit calculation. In neither does the defendant admit guilt. In both, there would be manifest injustice in binding to the plea a defendant who, with reasonable diligence, learns before sentencing of objective facts that significantly shift the risk/benefit balance in favor of going to trial.

## APPLICATION OF WITHDRAWAL STANDARD

■ Washington was charged under A.R.S. § 28–661, which makes it a criminal offense for a driver involved in an injury-causing accident to fail to stop at the scene or return to the scene to give personal information and assistance. To obtain a conviction under this statute, the state must prove a knowing violation. *State v. Porras,* 125 Ariz. 490, 493, 610 P.2d 1051, 1054 (App. 1980). *Porras* defines the requisite culpable mental state:

> [C]riminal liability attaches to an actor who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.

*Id.* (quoting *People v. Holford,* 63 Cal.2d 74, 45 Cal.Rptr. 167, 171, 403 P.2d 423, 427 (Ct.App.1965)).

■ When Washington entered his no contest plea, he could locate no witness to counter the state's evidence that he had left the scene consciously, under his own power. The high risk of conviction upon such evidence obviously influenced his decision to accept the benefits of the plea agreement offered by the state.

This risk-benefit calculation changed greatly, however, when two witnesses emerged belatedly to corroborate Washington's assertion that he was carried away unconscious and did not knowingly leave the scene. With the benefit of such evidence, Washington wished to proceed to trial, and the trial court erred by failing to recognize the manifest injustice of binding him to his plea.

The trial court explained its ruling in part by commenting that the evidence was not newly discovered because Washington had known about Miles from the start. Knowing the identity of a potentially exculpatory witness is not the same, however, as locating and securing the testimony of that witness.[3]

---

**3.** By the time of the evidentiary hearing, Washington's former public defender had taken medical leave. His new lawyer asserted that the defense investigator had made a diligent effort to contact Miles before the plea. When the trial court commented that no affidavit had been submitted detailing such an effort, Washington's lawyer stated, "I could present that right now,

Moreover, there is no basis in the record for concluding that Washington knew or should have known of Ms. Malone. To the contrary, Ms. Malone was a newly discovered witness, willing to come forward under oath and offer exculpatory evidence for which defendant had searched in vain before his plea. Such evidence sufficed in our opinion to support his motion to withdraw the plea.

■ The trial court also commented in rejecting defendant's motion that even if Washington could now present evidence that he did not consciously leave the scene,

> [t]he state can then counter that by saying, "Well, we also have evidence that he did not contact us as soon as he should have, and that puts him in technical violation of this statute."

> So this, quote, newly discovered evidence, unquote, really doesn't do anything.

In making this comment, we believe the trial court was misled by an argument the state made in its written response to the motion to withdraw. In that response, the state quoted from A.R.S. § 28–666, which requires a driver in an injury-causing accident to give notice of the accident to the local police department "immediately by the quickest means of communication, whether oral or written." After quoting that statute, the state argued,

> The Defendant advised police that he awoke around 7:30 or 8:00 a.m. Under Defendant's position, this would have been his first opportunity to fulfill his legal obligations, but even then he chose not to. The Defendant took no action to fulfill his legal obligations until seven hours later when he contacted the police department. Even under the alleged facts that the Defendant claims happened, the Defendant is still in violation of the statutes. Thus, the Defendant's "newly" discovered evidence does not indicate or show innocence.

This argument does not support the trial court's ruling. Washington was not indicted under, and did not plead no contest to violating, A.R.S. § 28–666, the reporting statute that the state invoked. Nor could he have been indicted under that statute. Section 28–666 does not contain a felony or misdemeanor classification; a violation is merely a civil offense. A.R.S. § 28–1031. Unfortunately, the state's trial counsel—who is not counsel on appeal—pointed none of this out to the trial court. Instead, after phrasing the written argument disingenuously to state that, even if Washington left the scene unconscious, he would still be "in violation *of the statutes,*" counsel stood silent at oral argument when the trial court misconstrued the argument to mean that, even if Ms. Malone's evidence were accepted, Washington would remain in "technical violation" of the felony statute to which he had pled.

The state has prudently abandoned this argument on appeal, but it should never have been made in the trial court; it merely invited the court to err.

## CONCLUSION

■ The *Alford* and no contest plea withdrawal standard is the same. The "manifest injustice" requirement of Rule 17.5 is satisfied in either case by proof, through information discovered with reasonable diligence before sentencing, that defendant has an objective basis for reevaluating the risk/benefit analysis that originally supported the plea. *Dockery,* 169 Ariz. at 528, 821 P.2d at 190; *Duran,* 162 Ariz. at 208, 782 P.2d at 326. Here this standard was met. Washington was charged with leaving the scene of an injury accident, a knowing offense under A.R.S. § 28–661. At the time of his plea, he had no witnesses to counter the state's evidence that he had consciously left the scene, and the risks of conviction were substantial. By the time of sentencing, a previously unlocatable witness had been found, and a previously unknown witness had stepped forward

---

Your Honor." However, discussion turned to the testimony of Ms. Malone, and the court and counsel did not return to the issue of diligence in attempting to locate Miles. Subsequently, in an affidavit accompanying the motion for reconsideration, the defense investigator described repeated efforts to contact Miles in October, November, and December of 1993. The state does not contend that these efforts fell short of due diligence.

to testify that Washington was taken unconscious from the scene. Because the availability of this testimony objectively supported Washington's reevaluation of the risk/benefit balance that underlay the plea, we accept jurisdiction, reverse the trial court's denial of Washington's motion to withdraw his plea, and remand for proceedings consistent with this decision.

CONTRERAS and TOCI, JJ., concur.