The PEOPLE of the State of
Colorado, Petitioner,

v.

Duane Fred SCHNEIDER, Respondent.

No. 99SC401.

Supreme Court of Colorado,
En Banc.

May 21, 2001.

David J. Thomas, District Attorney, First Judicial District Donna Skinner Reed, Chief Appellate Deputy District Attorney Golden, CO, Attorneys for Petitioner.

Maureen O'Brien, Lakewood, CO, Attorney for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

This case presents for review the question of when a defendant who has entered a plea may withdraw that plea based upon newly discovered evidence. We hold that in order for a court to permit such a withdrawal and set the matter for trial, the court must reasonably conclude that: (1) the newly discovered evidence was discovered after entry of the plea, and, in the exercise of reasonable diligence by the defendant and his or her counsel, could not have been earlier discovered; (2) the charges that the People filed against the defendant, or the charge(s) to which the defendant pleaded guilty were actually false or unfounded; and (3) the newly discovered evidence would probably bring about a verdict of acquittal in a trial.

In *People v. Schneider*, 991 P.2d 296 (Colo. App.1999), the court of appeals affirmed the trial court in allowing Duane Fred Schneider to withdraw his guilty plea. Because both courts applied one standard of review applicable to determine when a defendant may

have a new trial after conviction at trial, and because we announce a new standard tailored to post conviction review for guilty pleas, we reverse the judgment and remand the case to the court of appeals with directions to return it to the trial court for proceedings consistent with this opinion.

## I.

The People charged Defendant Duane Fred Schneider with four counts of aggravated incest against his daughter. Schneider pleaded guilty to an added fifth count of sexual assault on a child pursuant to section 18–3–405, 6 C.R.S. (2000), in exchange for the People's dismissal of the original four counts. The Defendant entered his plea on April 20, 1994, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and agreed that the People had a factual basis that would support guilt. The parties stipulated to a sentence to probation, and the court accordingly sentenced the Defendant to eight years probation.

Approximately two years after the entry of Defendant's conviction, his daughter, the alleged victim of the sexual assault, recanted her allegations of abuse in a letter to the trial court. The Defendant filed a motion under Crim. P. Rule 35(c) seeking to withdraw his plea on the basis of newly discovered evidence. In August of 1997, the trial court held a hearing on the Defendant's motion. His daughter testified at the hearing that she lied in her previous statements accusing her father of sexual abuse to her mother, family therapist, a social worker, and a police officer and that she recanted those statements of her own free will. Her mother and brother also testified that the alleged victim was recanting her prior accusations independently without pressure or input from them. The alleged victim also maintained that she had had no contact with her father and that he had exerted no pressure upon her to recant.

At the actual providency hearing, Schneider tendered a plea agreement that made no mention of an *Alford* plea, and indicated to the trial court a number of times upon inquiry that he intended to plead guilty. During the final colloquy of that hearing when the trial court was inquiring about factual basis

for the plea, Defendant's attorney intervened and clarified that Schneider was in fact entering an *Alford* plea. At the Rule 35(c) hearing two years later, Defendant testified that he accepted a plea agreement on the advice of counsel and because he feared that a jury might believe his daughter's allegations rather than his denials in this type of situation. He further testified that he entered an *Alford* plea because "that particular plea did not involve having to admit guilt for something that I hadn't done which was something that I refused to do." Defendant argued that the alleged victim's recantation is newly discovered evidence because he could not possibly have discovered it at the time he entered his plea.

The trial court granted Defendant's request for postconviction relief, issued an order setting aside Defendant's plea and set the matter for further proceedings. The trial court concluded that the issues inherent in a request for withdrawal of a plea after conviction were the same as those inherent in a motion for new trial after conviction by trial. Accordingly, the trial court applied the four part test in *People v. Gutierrez*, 622 P.2d 547 (Colo.1981), to determine when a court should grant a new trial based on newly discovered evidence, and held that the defendant should be permitted to withdraw his plea. The court of appeals affirmed with one judge dissenting. *See Schneider*, 991 P.2d 296.

We conclude first that an *Alford* plea is no different from a guilty plea for purposes of the instant analysis. Second, we conclude that a defendant who has been convicted after entry of a plea does have a right to file a request for postconviction relief under Rule 35(c) but such request raises different policy considerations than a motion for new trial; and third, we therefore apply a different test to the former. Accordingly, we reverse the court of appeals' judgment and remand with directions to return the case to the trial court for application of the test set forth herein.

## II.

### A.

■ Defendant contends that the court should treat him more leniently in permitting

him to withdraw his plea, even after conviction, because his original plea was an *Alford* plea and he never really admitted guilt.[1] We disagree. This court and the United States Supreme Court have both concluded that an *Alford* plea is the functional equivalent of a guilty plea within the system. In *North Carolina v. Alford,* the Supreme Court held that an "individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37, 91 S.Ct. 160; *see also People v. Birdsong,* 958 P.2d 1124, 1128 (Colo.1998).

The Supreme Court in *Alford* found that while most pleas of guilty consist of a waiver of trial and an express admission of guilt, "the latter element is not a constitutional requisite to the imposition of criminal penalty." *Alford,* 400 U.S. at 37, 91 S.Ct. 160. The Court emphasized in *Alford* that the Constitution is concerned with the practical consequences, not the formal categorizations, of guilty pleas under state law. *Id.*

■ So long as the defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt, a guilty plea is sufficient whether or not defendant admits actual guilt for the acts constituting the crime. *See Birdsong,* 958 P.2d at 1128. A defendant entering an *Alford* plea has engaged in some assessment of the state's case, and the *Alford* plea is properly characterized as a guilty plea. *See Birdsong,* 958 P.2d at 1127.[2]

Indeed, the trial court in this case consistently advised Defendant at his providency hearing of the ramifications of his entry of this guilty plea and the Defendant does not contest the validity of that plea.

### B.

■ Having concluded that an *Alford* plea and a guilty plea are the same for purposes of this analysis, we then must inquire into the purpose and impact of a plea by a defendant resulting in conviction. Plea bargains pursuant to which a defendant pleads guilty in exchange for charging or sentencing concessions from the District Attorney are an accepted part of our jurisprudence and are specifically sanctioned by statute, court rule and case law. *People v. Jasper,* 17 P.3d 807, 811–12 (Colo.2001). Indeed, a significant portion of criminal charges result in some sort of plea bargain.

■ By entering a plea of guilty, the defendant waives a series of constitutional rights. Courts take such waivers very seriously, and require the trial court to engage in comprehensive advisements such that the defendant fully understands the import of his decision to plead guilty rather than require the People to prove their case to a jury. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea ends the obligation of the prosecutor and the court to bring the defendant to trial and exposes the defendant to the imposition of criminal penalties. *People v. Madsen,* 707 P.2d 344, 346 (Colo.1985).

■ A defendant's entry of a guilty plea waives several important constitutional rights. "By pleading guilty to a charge, the defendant waives his Fifth Amendment privilege against self-incrimination, the Article III and Sixth Amendment right to trial by jury, and the right to confront one's accusers." *People v. Kyler,* 991 P.2d 810, 816 (Colo. 1999). A defendant entering a guilty plea waives the right to a speedy trial, the right to insist that the prosecution establish guilt be-

---

1. The record does not fully support that contention; however, since we find no distinction between guilty pleas and *Alford* pleas for this purpose, the factual issue is immaterial and we accept the defendant's characterization of his plea as having been tendered under *Alford.*

2. We disagree that an *Alford* plea is properly distinguished from a guilty plea. *See State v. D.T.M.,* 78 Wash.App. 216, 896 P.2d 108, 110 (1995). Accordingly, we disagree with courts

holding that an *Alford* plea may be withdrawn with greater liberality than a guilty or no contest plea. *See Washington v. Superior Court of Arizona,* 180 Ariz. 91, 881 P.2d 1196, 1198 (App. 1994) (holding that "because an *Alford* plea is merely a risk/benefit calculation, not an admission of guilt, where there is an objective basis for defendant's reevaluation, withdrawal should be permitted" (internal citations omitted)).

yond a reasonable doubt, and the right to present witnesses on behalf of the accused. *Id.* The court accepting the guilty plea must ensure that the defendant's decision to enter the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant" and be the product of a free and rational choice. *Id.* (internal quotation marks omitted).

■ Colorado statutes provide that "[t]he acceptance by the court of a plea of guilty acts as a waiver by the defendant of the right to trial by jury on all issues including the determination of the penalty to be assessed, and the acceptance of such plea also acts as a conviction for the offense." § 16–7–206(3), 6 C.R.S. (2000). After the court accepts a knowing and voluntary plea, "nothing remains but to give judgment and determine punishment." *Boykin,* 395 U.S. at 242, 89 S.Ct. 1709.

A defendant's decision to plead guilty "is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Brady v. United States,* 397 U.S. 742, 756, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

We also recognize that when a defendant pleads guilty, the case is effectively closed. The District Attorney believes that he or she will no longer need to develop the case for presentation to a jury, and investigation and witness identification ceases. Similarly, victims believe that the case is over. Unlike a conviction by trial, which the defendant can appeal and continue to contest vigorously, when a defendant enters a plea, he or she admits wrongdoing.

In this case, the Defendant does not argue that his initial entry of the plea was somehow deficient, or that he did not understand the consequences of the plea. He himself testified that he weighed various factors in making a choice to enter a plea. Hence, the sole question is whether he may now withdraw that plea because of newly discovered evidence.

## III.

■ The People argue that a defendant who has entered a plea should not be entitled to postconviction relief in the face of newly discovered evidence. They posit that the plea serves as a final conclusion to the case, based upon all of the facts known to the parties at the time and that this conclusion should remain final irrespective of ensuing events.

■ We do not take such a strict view, both because we do not believe our Rule of Criminal Procedure supports such a view, and because we do not believe it represents the just and fair outcome. Postconviction proceedings have a dual purpose: to prevent constitutional injustice and to bring finality to judgment. *People v. Rodriguez,* 914 P.2d 230, 252 (Colo.1996). Our Colorado Rule of Criminal Procedure 35(c)(2)(V) provides "every person convicted of a crime" the opportunity to apply for postconviction remedies if the application alleges "[t]hat there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation of the conviction or sentence in the interest of justice." The Rule grants to "every person" the right to seek postconviction relief—not just to individuals convicted after a trial.[3] In an era in which scientific techniques for analyzing evidence are advancing at a rapid pace, precluding the withdrawal of a plea on the basis of later-discovered evidence could work a significant injustice. We recognize that defendants do choose to enter guilty pleas for reasons other than clear guilt, although we hasten to add that the

3. *See also People v. Tomey,* 969 P.2d 785, 787 (Colo.App.1998), in which the defendant filed a motion for postconviction relief from his prior entry of an *Alford* plea. In his 35(c) motion, the defendant alleged that after sentencing, while in jail, another inmate informed him that the victim told him that she had lied about being attacked by the defendant. *Id.* at 787. The court of appeals determined that a defendant who entered a guilty plea in accordance with *Alford* does not waive the right to seek postconviction review based on newly discovered evidence. *Id.*

court system must treat such pleas as final for most purposes.

## IV.

■ However, the right to withdraw a plea of guilty or an *Alford* plea due to newly discovered evidence cannot be broad and unconstrained. "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case." *Brady*, 397 U.S. at 757, 90 S.Ct. 1463.

### A.

Previously, this court has only articulated the standard applicable to the determination of when a defendant who has been convicted at trial may seek a new trial based upon newly discovered evidence. *People v. Gutierrez*, 622 P.2d 547, 559–60 (Colo.1981). We have never examined the proper standard for when a defendant may withdraw a properly entered guilty plea under circumstances of newly discovered evidence. Both the trial court and the majority in the court of appeals relied upon the *Gutierrez* test here in determining that Schneider should be entitled to withdraw his plea and be granted a trial. *See Schneider*, 991 P.2d at 298.

■ *Gutierrez* arose in a context of a defendant seeking a new trial based on newly discovered evidence after having been previously convicted at trial:

> To succeed on a motion for a new trial on this ground, the defendant should show that the evidence was discovered after the trial; that defendant and his counsel exercised diligence to discover all possible evidence favorable to the defendant prior to and during the trial; that the newly discovered evidence is material to the issues involved, and not merely cumulative or impeaching; and that on retrial … the newly discovered evidence must be of such a character as to probably bring about an acquittal verdict if presented at another trial.

*Gutierrez*, 622 P.2d at 559–60.

The defendant in *Gutierrez* made a motion for a new trial after the completion of a full trial. The defendant presented evidence from an inmate stating that a third party, not the defendant, committed the charged offenses. *Id.* at 551. The trial court reviewed all the evidence from the trial and declined to grant a new trial. *Id.* We agreed with the trial court's assessment. We emphasized that the defendant failed to make the "essential showing" that the new evidence would produce an acquittal on retrial and, accordingly, the trial court correctly denied the motion for a new trial. *Id.*

### B.

We now conclude that the *Gutierrez* test is not the proper test for analyzing defendant's motion for withdrawal of plea here. We distinguish the circumstances here from those in *Gutierrez* by noting that here, it was not an independent trier of fact that determined the defendant's guilt based upon sworn trial testimony—it was the defendant who acknowledged his own guilt. Because of that simple fact, the trial court handling the postconviction proceeding is necessarily in a different position. That court does not have the full record of the prior trial, but it does have the defendant's own statements of guilt. *Gutierrez* presumes that the trial judge is in a position to weigh the new testimony against that provided at the prior trial and assess whether an acquittal verdict would enter based upon the new evidence. In the circumstance in which there never was a trial on the charges, the trial court is hampered in that assessment. Furthermore, there must be some consequence attached to the decision to plead guilty. A defendant who voluntarily and knowingly enters a plea accepting responsibility for the charges is properly held to a higher burden in demonstrating to the court that newly discovered evidence should allow him to withdraw that plea. Defendants should be allowed to withdraw properly entered guilty pleas only in order to avoid manifest injustice. *See ABA Standards for Criminal Justice: Pleas of Guilty* 14–2.1(b) (3d ed.1999).

■ Accordingly, we adopt a modified

standard[4] directing the trial court to engage in a three part analysis. The defendant bears the burden of proof on all three prongs. The defendant must present evidence from which the trial court may reasonably conclude that: (1) the newly discovered evidence was discovered after the entry of the plea, and, in the exercise of reasonable diligence by the defendant and his or her counsel, could not have been earlier discovered; (2) the charges that the People filed against the defendant, or the charge(s) to which the defendant pleaded guilty were actually false or unfounded; and (3) the newly discovered evidence would probably bring about a verdict of acquittal in a trial. We hold that this formulation evolves from the standards set forth by this court in *Gutierrez* and maintains the appropriate balance between finality and fundamental fairness.

The first and third prongs of the test come from Rule 35(c) and *Gutierrez*. First, Rule 35(c)(2)(V) allows postconviction relief based on "evidence of material facts not theretofore presented and heard" that neither defendant nor his or her attorney could have been aware of. Next, *Gutierrez* requires that the evidence be such that it would probably bring about a judgement of acquittal. 622 P.2d at 559–60. The second prong of the test we articulate for the first time in this case. It directs the defendant to demonstrate to the trial court's satisfaction that the charges filed by the People or the charges to which the defendant pleaded guilty were actually false or unfounded. In its analysis, the trial court may address the nature and detail of the factual basis supporting the original plea, as well as the credibility of witnesses and evidence at the 35(c) hearing.

 We turn now to this case involving witness recantation. The parties do not dispute that Defendant could not have earlier presented the evidence of recantation, so the first prong of the test is not at issue. The second prong of the test focuses the court on whether the earlier accusations against the defendant were actually false. *See Schneider*, 991 P.2d at 302 (Briggs, J., dissenting). The focus on falsity of the original accusation causes the trial court to turn its attention to the question of whether the original charges were false. In that inquiry the trial court can analyze what other corroborating evidence, if any, the People relied upon in making the original charges to assess whether those accusations were likely true at the time. The trial court need not merely measure the credibility of one witness at a Rule 35(c) hearing based upon her testimony at that hearing. Rather, the trial court may review all statements made by that witness or other witnesses at the time the charges were filed, surrounding circumstances at that time—as well as the testimony offered at the later hearing—to determine who was lying and when.

 As part of that determination, the trial court must, of course, assess the credibility of the recanting witness in the 35(c) hearing itself. The trial court properly weighs evidence and determines the credibility of witnesses. *People v. Pitts*, 13 P.3d 1218, 1221 (Colo.2000). Trial courts are uniquely situated to assess credibility, and in this instance, must be reasonably satisfied that the earlier accusations were actually false. In that process, the court may consider the credibility of the witness recanting under oath and the circumstances surrounding the earlier accusations. For example, the court may consider any motive to fabricate the initial accusation; observations by witnesses of the recanting witness when making the initial accusations; the nature and detail of both the accusations and the recantation; and whether the accusations were made under oath. *See Schneider*, 991 P.2d at 303 (Briggs, J., dissenting). We accept the trial court's necessary role in assessing credibility under these circumstances, but direct the trial court to make findings as to credibility that will permit appropriate appellate review.[5]

---

**4.** This formulation is substantially similar to that set forth by Judge Briggs's dissent in the court of appeals in *People v. Schneider*, 991 P.2d at 299–304.

**5.** In *People v. Estep*, 799 P.2d 405, 408 (Colo. App.1990), the court of appeals reversed a trial court's denial of a motion for new trial, because the court applied the standard of its own experience in evaluating credibility as the sole basis for

Recanted testimony and its import in court proceedings is not a new problem. In the seminal case of *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928), the court allowed the grant of a new trial based on recanted testimony when:

(a) The court is reasonably well satisfied that the testimony given by a material witness is false; (b) That without it the jury might have reached a different conclusion; (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Id.* at 87–88.

Many modern courts apply this test or some variation of it to recanted testimony. *See United States v. Pearson,* 203 F.3d 1243, 1274 (10th Cir.2000); *United States v. Di Paolo,* 835 F.2d 46, 49 (2d Cir.1987) (holding defendant must prove falsity of initial trial testimony); *United States v. Bradshaw,* 787 F.2d 1385, 1391 (10th Cir.1986); *United States v. Adi,* 759 F.2d 404, 408–09 (5th Cir.1985).

■ Courts generally view a witness's recantation of prior trial testimony with great suspicion. *See Baldree v. Johnson,* 99 F.3d 659, 663 (5th Cir.1996); *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *United States v. Provost,* 969 F.2d 617, 619 (8th Cir.1992); *State v. Krum,* 183 Ariz. 288, 903 P.2d 596, 602 (1995); *State v. Smith,* 126 Kan. 670, 271 P. 289, 290 (1928); *State v. Miller,* 253 Mont. 395, 833 P.2d 1040, 1041 (1992); *State v. Clark,* 2000 Ohio App. LEXIS 5413, *5, 2000 WL 1726851 (Ohio App. Nov. 22, 2000); *State v. Garcia,* 743 A.2d 1038, 1047 (R.I.2000); *Marshall v. State,* 305 N.W.2d 838, 840 (S.D. 1981); *State v. McCallum,* 208 Wis.2d 463, 561 N.W.2d 707, 711 (1997); *Brown v. State,* 816 P.2d 818, 823 (Wyo.1991).

Skepticism about recantations is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon. *See Provost,* 969 F.2d at 621 (1992); *Myatt v. Hannigan,* 910 F.2d 680, 685 n. 2

(10th Cir.1990) (noting that child recanting in sexual abuse case is not atypical); *State v. Tharp,* 372 N.W.2d 280, 282 (Iowa Ct.App. 1985) (finding "where families are torn apart, there is great pressure on the child to makes things right"); *State v. Gallagher,* 150 Vt. 341, 554 A.2d 221, 225 (1988) (observing "the high probability of a child victim recanting a statement about being sexually abused").

■ We recognize that some courts hold that when the newly discovered evidence is a witness's recantation, then that recantation must be corroborated by other newly discovered evidence in order to be credible. *See McCallum,* 561 N.W.2d at 711; *Zillmer v. State,* 39 Wis.2d 607, 159 N.W.2d 669, 673 (1968). We decline to enshrine that requirement as a mandatory element of the test, but certainly recognize that a trial court may consider corroborating evidence in assessing the recanting witness's credibility.

■ Should the defendant prove the second element, then the trial court turns to the third prong of the test: namely, whether the new evidence would probably bring about a verdict of acquittal at trial. *See Schneider,* 991 P.2d at 302 (Briggs, J., dissenting). This third element requires the trial court to analyze the materiality of the new evidence. Even if the evidence meets the first two tests, it may be insufficiently material to impact the outcome of a trial. *See Rodriguez,* 914 P.2d at 292 (holding the determination of whether newly discovered evidence would probably bring about an acquittal "should be premised on whether the new evidence, as developed in trial, when considered with all the other evidence is such that a reasonable jury would probably conclude that there existed a reasonable doubt as to defendant's guilt and thereby bring about an acquittal verdict").

■ A trial court may determine that while a witness's earlier statement was false, the statement concerned a tangential matter or constituted cumulative testimony and that a jury or trial judge in a new trial would

determining whether the new evidence would likely bring about an acquittal at a retrial. Although we agree that the findings were insufficient to support the trial court's ruling, we disap-

prove the holding that a trial court may not or should not explicitly apply its own experience in measuring credibility.

probably find the defendant guilty. Such evidence would neither support the grant of a new trial in a *Gutierrez* fact setting, nor should such evidence support a defendant's withdrawal of a properly entered and accepted guilty plea.

V.

 In its written order following the 35(c) hearing in this case, the trial court specifically found that the recantation testimony constituted new evidence discovered after the plea and that Defendant exercised reasonable diligence in discovering all possible exculpatory evidence before the entry of the plea. At the time Defendant entered his plea, the alleged victim still maintained that the sexual assaults occurred. The trial court also found that the girl's accusations were certainly material to the issues involved. The trial court concluded its analysis by addressing whether the newly discovered evidence was of such a character as probably to bring about a verdict of acquittal if presented at trial. The trial court determined that the finder of fact must consider the credibility of the alleged victim to determine which rendition of events the fact finder would believe. The court based its grant of postconviction relief on its opinion that "the recantation should be sufficient to cause a reasonable jury to conclude that there exists a reasonable doubt."

The trial court thus applied the first and third prongs of the standard we adopt today. It did not apply the second prong in specifically analyzing whether the accusations were false when made. Although such a finding can be inferred, it is not the province of this court to infer factual findings. Consequently, we remand the case for the trial court's determination through an examination of the totality of the circumstances of the truthfulness or falsity of the original accusation. *See People v. McNeese*, 892 P.2d 304, 314 n. 20 (Colo.1995) (finding the supreme court's adoption of a new test requires a remand for further proceedings). Such an inquiry will necessarily encompass an evaluation of the witness's credibility, but may include a variety of other factors as well.

VI.

Our holding today comports with the well-settled principle that finality in the adjudication of controversies and the conclusiveness of judgments is crucial to the administration of justice. *See Davidson v. McClellan*, 16 P.3d 233, 236 (Colo.2001). "It is essential, for practical reasons as well as for fundamental fairness, that there be a point at which litigation reaches a conclusion and that parties be permitted to rely on the outcome." *Id.* The determination of whether newly discovered evidence in the form of a witness recantation is sufficient to allow a defendant to withdraw a guilty plea properly falls within the scope of the trial court's power in a 35(c) hearing. That court must assess the recanting witness's credibility to determine whether the testimony constitutes newly discovered evidence, whether the original charges filed or pled to were actually false or unfounded, and if the recantation would probably result in a judgment of acquittal in a new trial. Accordingly, we reverse the judgment of the court of appeals, and remand the case with directions to return it to the trial court for proceedings consistent with this opinion.