**Jay N. MASON, Petitioner/Cross–Respondent,**

v.

**The PEOPLE of the State of Colorado, Respondent/Cross–Petitioner.**

**No. 99SC877.**

Supreme Court of Colorado, En Banc.

May 21, 2001.

Rehearing Denied June 11, 2001.

Keith Pope Boulder, CO, Attorney for Petitioner/Cross–Respondent.

Ken Salazar, Attorney General, Roger G. Billotte, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Respondent/Cross–Petitioner.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari in this matter in conjunction with *People v. Schneider*, No. 99SC401, to review the question of when a defendant who has entered a guilty plea and been sentenced may withdraw that plea based upon newly discovered evidence.[1] Under the test we set forth today in *Schneider*,

---

1. We granted certiorari review on two issues:
    (1) Whether a defendant who enters a guilty plea is entitled to later seek postconviction relief under Crim. P. 35(c) on the ground of newly discovered evidence.
    (2) Whether the court of appeals erred in applying the more burdensome legal standard [set forth in *People v. Gutierrez*, 622 P.2d 547 (Colo.1981)] for a motion for a new trial following jury verdict and prior to sentencing to Mr. Mason's postconviction motion to vacate his guilty pleas.

25 P.3d 755, 761–762, 2001 WL 533456 (Colo. 2001), we conclude that the trial court did not err when it denied Defendant's Crim. P. 35(c) motion for a new trial based on newly discovered evidence. Therefore, we affirm the judgment of the court of appeals in *People v. Mason*, 997 P.2d 1245 (Colo.App.1999).

## I.

Defendant Jay N. Mason was charged with first-degree murder, second-degree murder, first-degree assault, and crimes of violence as the result of events occurring on November 10, 1989. On June 26, 1990, he pleaded guilty to one count of first-degree assault pursuant to section 18–3–202, 6 C.R.S. (2000), a class three felony, and one count of reckless manslaughter pursuant to section 18–3–104, 6 C.R.S. (2000), a class four felony. The court sentenced Defendant to sixteen years in the Department of Corrections for the class three felony and eight concurrent years for the class four felony.

The charges stemmed from an altercation at a recreation center involving several members of opposing gangs, where Melvin McFalls was fatally stabbed and Andre Brown suffered a knife wound. When interviewed by police, Defendant Mason admitted swinging a knife at the other gang members but expressed uncertainty as to whether he had actually stabbed anyone. At the time of the providency hearing, Defendant reiterated his uncertainty as to whether he was the one whose blows actually caused either the death or injury to the victims, but did admit that the factual basis supported his guilty plea. The trial court had held an extensive preliminary hearing, and agreed to accept the preliminary hearing testimony and exhibits as a factual basis for Mason's plea.

Nearly five years after sentencing, while incarcerated in the Department of Corrections, Defendant received a letter from Damon Birch who had been at the recreation center the evening of the altercation.[2] In the letter, Birch claimed responsibility for stabbing Andre Brown, the victim of the first degree assault to which Defendant pleaded guilty. At the time of the incident, in an interview with police, then fifteen-year-old Birch denied that he had participated in the fights at the recreation center and implicated Defendant in the stabbings. In his letter to Defendant five years later, he stated that he was responsible for the stabbing of Andre Brown. Birch claimed to have picked up the knife in the chaos of the fights at the recreation center and stabbed Brown in order to assist his cousin Sorl Shead who appeared to be in danger. "I figured you didn't know what I had done, so I didn't tell you or nobody else cause I was scared I would go to prison and I was too small to go to jail then ... I thought you were going to get a life sentence for [McFall], so it seemed like it would not matter if I didn't say nothing," he wrote.[3]

In December of 1997, the trial court granted a hearing on Defendant's Crim. P. 35(c) motion for postconviction relief based on newly discovered evidence.[4]

---

**2.** Birch is a cousin of Mason's co-defendant, Sorl Shead (referred to in Birch's letter as Sugg). The People prosecuted Shead as a co-defendant.

**3.** The entirety of the letter read as follows:

I know I haven't wrote you a lot and I feel bad for it. There is a lot I want to say and have always wanted you to know but I don't want you to trip out on me. You've been in jail for a long time now and the longer you are in there the harder it is for me to say what's on my mind. After I tell you you will understand why. When you were fighting Peanut and you dropped the knife that he had, I didn't want him or somebody he was with to get it so I got it. I saw those dudes beating up on Sugg and he was looking fucked up, so I went over and tried to get Andre up off of him, but I was too small, so I stabbed him to make him stop, but

he still didn't stop hitting Sugg. That's when I heard you calling me. When we got outside and you took the knife away from me I figured you didn't know what I had done, so I didn't tell you or nobody else cause I was scared I would go to prison and I was too small to go to jail then. On the inside I've always felt bad for letting you take the blame for something I did. At the time I thought you were going to get a life sentence for Peanut, so it seemed like it would not matter if I didn't say nothing. I hope they let you out soon cause the longer you stay in there the worse I feel.

**4.** Evidently, Defendant filed a previous 35(c) motion in the fall of 1996 seeking postconviction relief based on Mr. Birch's letter. The record does not contain a copy of Defendant's earlier motion. The trial court denied that motion on

At that hearing, the trial court heard testimony from the defendant and five other witnesses. The court also reviewed various exhibits, including the transcript of the providency hearing and the original police report. In its ruling following the hearing, the trial court applied the four part test set forth by this court in *People v. Gutierrez*, 622 P.2d 547, 559–60 (Colo.1981), for when a court may grant a new trial based on newly discovered evidence. Based upon those findings, the trial court denied the Defendant's motion for a new trial. The court of appeals affirmed the trial court's denial of postconviction relief and similarly relied on the standard set forth in *Gutierrez*. *See Mason*, 997 P.2d at 1247.

## II.

■ We have recently addressed the legal questions posed by this appeal. Specifically, we have concluded that even a defendant who has entered and been sentenced on a valid plea of guilty may, under certain circumstances, be entitled to withdraw that plea. The plain language of Crim. P. Rule 35(c)(2)(V) provides "every person convicted of a crime" the opportunity to apply for· postconviction remedies if the application alleges "that there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court of jury, and which requires vacation of the conviction or sentence in the interest of justice." *See also Schneider*, 25 P.3d at 760–761.

■ In *Schneider*, we recognized that there may be circumstances where a defendant should be permitted to withdraw his plea in order to avoid manifest injustice. *Id.*, at 761–62. We formulated a test for the trial court to apply in making that determination, which is more stringent than the test in *Gutierrez*. The test requires the defendant to present evidence in a Rule 35(c) hearing

from which the trial court may reasonably conclude that: (1) the newly discovered evidence was discovered after the entry of the plea, and, in the exercise of reasonable diligence by the defendant and his or her counsel, could not have been earlier discovered; (2) the charges that the People filed against the defendant, or the charge(s) to which the defendant pleaded guilty were actually false or unfounded; and (3) the newly discovered evidence would probably bring about a verdict of acquittal in a trial. *Id.* at 761–762.

The *Gutierrez* test applies to the circumstance in which a defendant who was convicted after a full trial and sentenced accordingly seeks a new trial. 622 P.2d at 559–60. Although the *Gutierrez* situation bears some resemblance to the situation of a defendant similarly seeking a new trial on the basis of discovery of new evidence, here the defendant has already admitted guilt and the case has been resolved by plea. Hence, when a defendant has entered a valid plea and been sentenced, the *Schneider* test also requires a showing by the defendant that the original charges were false or unfounded. *Schneider*, 25 P.3d at 761–762.

## III.

■ The *Gutierrez* test contains four elements: (1) that the evidence was newly discovered; (2) that defendant and his counsel were diligent in their efforts to discover the evidence prior to and during trial; (3) that the newly discovered evidence is material and not merely cumulative or impeaching; and (4) that on retrial, the newly discovered evidence would probably bring about an acquittal verdict. 622 P.2d at 559–60.

In this case, the trial court addressed each of the *Gutierrez* elements in detail. It found that Defendant received the confession letter in 1995 after entry of his guilty plea, and that Defendant and his counsel exercised all reasonable diligence in procuring exculpatory

September 19, 1996, in a brief written order claiming that the motion lacked sufficient credence to set a hearing. The court of appeals, in *People v. Mason*, No. 96CA1862 (Colo.App. Sept.

18, 1997) (not selected for official publication), affirmed the trial court's denial of a 35(c) hearing. Defendant then filed the motion for postconviction relief at issue in this matter.

evidence before entry of the plea.[5] The court also found that the confession was material to the issues at hand.

The court concluded, however, as to the fourth prong of the test that the confession would probably not cause a reasonable jury to have a reasonable doubt as to Defendant's guilt. Specifically, the trial court found that:

> There is nothing that takes Mr. Mason away from a fight where a person died; and under a complicity theory, a conspiracy theory, a felony murder type of theory, during a criminal episode, a person died; and in that criminal episode, there is nothing, even in Mr. Birch's testimony—or Mr. Birch's letter to say that Mr. Mason wasn't involved in the altercation.

The trial court goes on to find that the letter places Defendant at the scene of the crime with a knife, and that since Mr. Brown suffered multiple stab wounds, it would not be inconsistent to conclude that both Mr. Birch and Defendant stabbed him. Lastly, the trial court read the letter as inferring that Defendant was involved in killing Mr. McFalls, the victim who died in the incident. The trial court also reviewed the police reports associated with the original incident and noted that other witnesses placed Mason at the scene with a knife in his hand, and implicated him in statements such as, "We got them slobs." Accordingly, the trial court concluded that the defendant had not met his burden of showing that the newly discovered evidence would bring about an acquittal if presented at trial.

The court of appeals agreed and affirmed the trial court ruling.

## IV.

■ We must determine whether the adoption by this court of the *Schneider* test for application in circumstances in which a defendant seeks to withdraw a plea after sentencing based upon newly discovered evidence requires that this case be reversed and remanded for additional findings. We conclude that it does not.

The first prong of the *Schneider* test derives from Rule 35(c) and *Gutierrez*. It relates to whether the evidence was legitimately newly discovered and could not have been earlier discovered. The trial court adequately addressed this issue and neither party argues that the evidence is not newly discovered. The trial court also made findings on the third element of the *Gutierrez* test regarding materiality of the proffered new evidence and found that the evidence would be material at a trial. The trial court did not specifically address what has now become the second element of the *Schneider* test, actual falsity of the original charges, as a part of its analysis, but did make findings on the question of whether the interests of justice would be served by allowing the plea to be vacated. In that regard, the trial court found that:

> The interests of justice would not be served by allowing this plea to be vacated based on newly discovered evidence in that Mr. Mason got the benefit of a bargain rather than face the possibility of life in prison despite the evidence, and I think very tellingly, during the agreement, he stated that he didn't know if he did the stabbing and there was kind of an assumption, if you read the providency hearing, that Mr. Mason probably didn't do the stabbing, but he was involved to the extent that he was concerned that either a complicity here—that he could be found liable as the principal [for murder]. . . .

The last prong of the test, both in *Gutierrez*, 622 P.2d at 560, and in *Schneider*, 25 P.3d at 762 directs the trial court to assess whether the new evidence would probably bring about a judgment of acquittal in a new trial. As noted, the trial court made extensive findings regarding that element and concluded that the evidence would not bring about acquittal of Mason.

---

**5.** The trial court essentially gave Defendant's lawyers the benefit of the doubt that they diligently pursued all exculpatory evidence on Defendant's behalf including interviewing pertinent witnesses. The court did hear evidence that no defense lawyer interviewed Mr. Birch before entry of the plea. The court determined, however, that it was unclear whether the lawyer failed to pursue that interview or if Mr. Birch refused to speak with Defendant's attorneys on the advice of counsel.

Hence, although the *Schneider* test does differ from the *Gutierrez* test in some significant ways, those differences are not relevant to this case. The trial court found that the Defendant failed to prove a critical element of what has now become the *Schneider* test, and absent that proof, no new trial would be available to him under either test. Such findings are amply supported by the record.

## V.

Accordingly, we affirm the judgment of the court of appeals in its decision upholding the trial court's denial of Defendant's motion for postconviction relief.